F. L. STARRY, Appellee, v. C. H. HANOLD, Appellant.

**MOTOR VEHICLES:** Negligence—Excessive Speed—Persuasive Circum-
1  stances. Circumstances are oftentimes more persuasive on the issue
of speed than direct testimony is. So held where a collision was
caused by a vehicle's approaching from the rear of another vehicle.

**MOTOR VEHICLES:** Negligence—Passing On Left Side. Evidence re-
2  viewed, and held to present a jury question on the issue whether
the driver of a vehicle was negligent in attempting to pass on the
left of a forward moving vehicle.

**TRIAL:** Instructions—Construction As a Whole. Instructions are all-
3  sufficient if correct and not misleading when construed as a whole.

**APPEAL AND ERROR:** Harmless Error—Curing Error by Remittitur.
4  An inconsistency in the petition and the instructions as to the
amount of the recovery prayed for which results in an excessive
verdict may be corrected by a remittitur after verdict, the intent of
the jury being manifest. (See Book of Anno., Vol. 1, Sec. 11548,
Anno. 196 *et seq.*)

**TRIAL:** Argument—Figure of Speech. The employment in an argu-
5  ment of quite vivid figures of speech does not necessarily constitute
prejudicial error. (See Book of Anno., Vol. 1, Sec. 11550, Anno. 131
*et seq.*)

**NEW TRIAL:** Verdict—Excessiveness—$8,000. Verdict of $8,000 for
6  personal injury sustained. (See Book of Anno., Vol. 1, Sec. 11550,
Anno. 323 *et seq.*)

Headnote 1: 28 Cyc. p. 47. Headnote 2: 28 Cyc. p. 49. Headnote 3:
38 Cyc. p. 1779. Headnote 4: 4 C. J. p. 1047; 29 Cyc. p. 1022. Headnote
5: 29 Cyc. p. 1498. Headnote 6: 17 C. J. p. 1096.

Headnote 1: 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488; 51 L. R. A.
(N.S.) 993; 2 R. C. L. 1192. Headnote 2: •41 L. .R. A. (N.S.) 346;
2 R. C. L. 1194. Headnote 3: 14 R. C. L. 817. Headnote 6: L. R. A.
1915F, 30.

*Appeal from Jones District Court.*—FERGUS L. ANDERSON,
Judge.

JANUARY 11, 1927.

Action at law, to recover damages caused by the alleged

negligent operation of an automobile. Verdict and judgment for plaintiff; and defendant appeals.—*Affirmed.*

*Gorman & McLaughlin* and *Johnson, Donnelly & Lynch,* for appellant.

*Park Chamberlain* and *Barnes, Chamberlain, Thompson & Hanzlik,* for appellee.

STEVENS, J.—I. The accident out of which appellee's cause of action for damages arose, occurred between 6 and 7 o'clock on the night of November 2, 1923. While he was proceeding northward on a public highway, approaching the town of Wyoming from the south in a lumber wagon drawn by a span of horses, his wagon was run into by appellant, who was driving a Ford sedan. The collision frightened the team, causing it to become detached from the wagon and to run away. At the time of the accident, appellee was seated on the spring seat placed on top of the side boards on the wagon box, resting his feet on the end gate. The team dragged him over the end gate, inflicting severe permanent injuries to his head. The night was dark and cloudy. The highway, at the point of the accident, was approximately 24 feet in width, somewhat elevated, with ditches on either side. There was a bridge a short distance south of the place of the accident, the elevation of the floor of which was five feet above the surface of the highway at the point where appellee claims the accident occurred.

The front left side of the automobile struck the wagon just back of the right front wheel, breaking the glass of the left front light and destroying the bulb. The only other injury to the car was to loosen the hub cap and bend the V-shaped connection between the front wheels. Appellant later drove the automobile from the scene of the accident. When the automobile struck the wagon, the right front wheel of the automobile was somewhere between 6 and 8 inches from the east shoulder of the highway. The testimony of appellee tended to show that he was proceeding on the right side of the center of the highway; that, just before the accident, he observed the light of the automobile shining on the ground and on his horses' feet. Observing this, he turned his team to the right, so as to give a wider space for

the automobile to pass on the left. The testimony of appellant and of two companions who occupied the rear seat of the automobile tended to show that the decline in the roadway immediately north of the bridge threw the rays of the lights onto the ground, so that objects in the highway could be seen only for a short distance; that, as soon as the automobile reached the level part of the roadway and the lights shone on the wagon, appellant immediately set his brakes and turned to the right. All of the witnesses agree that the wagon, at the time of the collision, was east of the center of the highway, but standing slightly northeast and southwest. The cause was tried by appellant upon the theory that the collision and consequent injuries to appellee were due wholly to unavoidable accident, and that the evidence was wholly insufficient to charge appellant with any negligence on his part which was the proximate cause of the injuries complained of.

Two grounds of negligence were submitted by the court to the jury: (a) That the automobile was being operated by appellant at a careless and reckless rate of speed; and (b) that he attempted to pass the wagon on the right-hand side of the road, in violation of the statute.

The direct evidence as to the speed of the automobile was confined to the testimony of appellant and his two companions. They all testified that the car passed over the bridge at about 15 miles per hour, and could not have been going much faster when appellant discovered the presence of the wagon in the highway. The tracks of the two vehicles were distinct in the highway the morning following the accident. Appellant testified that the wheels of his car slid about 20 feet after the brakes were set. The testimony of the witnesses for appellee tended to show that it was possibly 30 feet. The wagon tongue, which was strengthened by iron braces on either side, was broken, and it is contended by appellee that this was caused by the collision. Appellant contends that the tongue was broken when the horses swung to the left and ran away. The slight injury to the automobile is a circumstance tending to show that the car was moving with little force at the time it struck the wagon. The distance in which a Ford sedan may be stopped, when traveling at the rate of 15 or 20 miles per hour, was a question of fact for

1. MOTOR VEHICLES: negligence: excessive speed: persuasive circumstances.

the jury. It was for the jury to say from the evidence whether
the automobile was being driven at an excessive rate of speed.
Direct testimony is often less persuasive than circumstances.
Upon appellant's theory, the lights of his automobile were much
restricted by the decline in the highway, and he could see ob-
jects but a short distance to the north. The statute imposes the
duty upon every operator of a motor vehicle on the public high-
way to drive the same in a careful and prudent manner, and at a
rate of speed that will not injure the property of another or the
life or limb of any person. Section 5028, Code of 1924. This
issue, we think, was properly submitted to the jury .

. II. According to the testimony of appellee, the accident oc-
curred at a point 15 or 16 rods north of the bridge, and according

2. MOTOR VEHI-   to the testimony of appellant, 7 or .8 rods north
CLES: negli-   thereof. The conflict in the evidence on this
gence: passing
on left side.   point presented a question of fact for the jury.
If the accident occurred 15 rods north of the bridge, the jury
might well have found that the road was practically level for
a distance of at least 150 feet south thereof. The greater part
of the decline in the highway was near the bridge. The jury
might, therefore, well have found that appellant did see, or
should have seen, the wagon in the highway for a distance of
at least 75, and possibly 100, feet. Appellant testified that the
lights on his automobile were in good condition, and that he
could clearly see objects 75 feet in front of him. There was
evidence also from which the jury might have found that the
wagon was at all times east of the center of the road, and that
the angle at which it stood after the accident was slight. The
evidence on behalf of appellee also tended to show that there
was ample room for appellant to have passed the wagon in
safety on the left side. The explanation given by the appellant
for the presence of the automobile on the right side of the
wagon was that, when he discovered it in the road, he saw that
it was proceeding northeast, and he thought he had more ,room
on that side to stop his car than on the left. The right front
wheel of the car was very near the shoulder of the grade when
the collision occurred. The evidence on behalf of appellant
was that, when he left the scene of the accident, he passed the
wagon on the right side. There was testimony on the part of
appellee that the wagon was moved before this was accom-

plished. Another automobile coming upon the scene passed the wagon to the left. It is conceded that the wagon was moved somewhat before that occurred, but the mother of the driver of the car testified that there was ample room to pass without moving the wagon.

According to the testimony of an engineer who made measurements, the width of the road 15 rods north of the bridge was 23.3 feet, and the depth of the ditches on either side about 3 or 3½ feet. One witness testified that the track of the automobile on the right side was close to the east bank for a distance of at least 50 feet south. Appellee testified that appellant told him that he turned to the right because the wagon was so near the left side of the road that he thought he could pass on the right.

T. M. Starry, a witness for appellee, testified that Behnke, one of the occupants of the automobile, told him that the cause of the accident was "poor lights and damn fast driving, and I told Mr. Hanold so, too." The witness testified that he thought his remark was hardly as broad as stated by the witness.

No useful purpose will be served by going into the evidence in further detail. We think it was sufficient to justify the submission of both issues to the jury. The evidence as to speed of the automobile was not very strong, but there were circumstances from which an inference might be drawn that the car was moving much faster than shown by the direct testimony of the witnesses. We think the evidence tending to show that appellant attempted to pass the wagon on the right side fully justified the submission of that issue to the jury.

Many errors assigned by counsel go to the sufficiency of the evidence to justify the court in submitting any issue of negligence to the jury. The alleged errors are stated in different forms, so as to present every possible theory of appellant's as to the facts.

III. It is contended by appellant that Paragraphs 4 and 9 of the court's charge to the jury are inconsistent. Instruction 4 submitted the two grounds of negligence already discussed. In

3. TRIAL: instructions: construction as a whole.

Instruction 9, the court told the jury that the law requires every person operating a motor vehicle on the public highway to drive the same in a careful and prudent manner, and at a rate of speed that

will not endanger the life or limb of any person. The point urged is that the latter instruction submits additional grounds of negligence, and is not confined strictly, as it should have been, to the question of the speed of the automobile. The court, however, in the same paragraph of the instruction again stated the duty of the driver of an automobile to exercise ordinary care, under the circumstances, respecting the speed. The evident purpose of the latter paragraph of the instruction was to inform the jury that the words "care" and "prudence" referred particularly to the speed of the automobile. The instruction may not be quite as clear as it might have been made, but it is not erroneous. The instructions as a whole must have made it clear to the jury that but two grounds of negligence were submitted to, or to be considered by, them. It is clear that the court did not intend in a simple instruction to submit additional grounds of negligence. If there is any inconsistency in the two instructions, it entirely disappears when the charge is considered as a whole.

IV. The court in the seventh paragraph of its charge instructed the jury that it was the duty of appellee to exercise ordinary care for his own safety, and that a failure to do so would constitute negligence upon his part. The court further in this instruction told the jury that appellee had a right to rely upon those approaching him from the rear to exercise ordinary care. This instruction must be interpreted in connection with the preceding one. In Instruction 6, the jury was told that, to entitle the plaintiff to recover, the burden was on him to show by a preponderance of the evidence that he was himself free from negligence which contributed to the injuries received by him. The instruction further placed the burden upon the plaintiff to prove the grounds of negligence submitted. The instruction is not, as counsel claim, open to the inference that the contributory negligence of the plaintiff was a defense, to be established by the defendant, nor do we think it inferentially or otherwise informed the jury that no duty rested upon appellee to exercise ordinary care for the safety of others using the public highway. When the two instructions are read together, they are sufficiently clear, and could not, in our opinion, have misled the jury.

The exception to Instruction 8 is based upon the theory of

appellant that the evidence wholly failed to show negligence on the part of appellant, or that he attempted to pass the wagon on the wrong side.

V. There is an inconsistency in the allegations of the petition. It is alleged therein that appellee suffered damages in the sum of $15,000. This allegation is followed by allegations as to the actual expenses incurred on account of the accident and loss of time and wages. Immediately preceding the prayer, which is for judgment in the sum of $15,000, is the following:

"He, plaintiff, suggests that he claims for the physical and mental pain suffered by him and for the personal injuries sustained by him, which he alleges to be permanent in nature, and which will continue to affect the plaintiff's mental faculties as well, the sum of $4,550."

The court, in stating the issues, repeated, in substance, the portion of the petition just quoted. In a later instruction, in which the rule or measure of damages is stated, this allegation is entirely ignored; but the items of expense and loss of wages are recalled, and the jury is told in the usual language that there is no fixed or exact rule by which to compute damages for pain and suffering, etc. The verdict was for $12,550. At the time of ruling on the motion for a new trial, the court evidently discovered the apparent inconsistency in the petition and in the statement of the issues, and required appellee to remit $4,550 or accept a new trial. The amount was promptly remitted. It is the claim of appellant that the court erred in stating the issues, and that the allegations of the petition limited appellee's recovery in any event to $4,550, and that recovery should not have been permitted in excess of the above amount. It is apparent that the jury allowed the item of $4,550 in full, and $8,000 for all other damages. The court clearly intended Instruction 12 to limit the consideration of the jury to the various items for which recovery could be had, under the issues. The remission, we think, corrected the error. The intention of the jury is plain. No reference to the specific sum should have been made in the statement of the issues. This was, no doubt, an oversight on the part of the court.

VI. Appellant also claims that the verdict is the result of

4. APPEAL AND ERROR: harmless error: curing error by remittitur.

passion and prejudice induced by the misconduct of counsel for appellee in argument to the jury.

Objection was made to the argument of counsel for appellee to the jury upon the ground that it was improper for counsel to refer to the failure of appellant to drive his car at a rate of speed at which he could stop it within the radius of his lights. The court promptly informed counsel that the argument was improper.

5. TRIAL: argument: figure of speech.

Then, or later in the course of the argument, counsel declared that appellant was as negligent as a man would be who fired a high-powered rifle on the highway in the dark, or words to that effect. The court again admonished counsel, and the argument proceeded. Some latitude is allowed counsel for the exercise of his imagination, and in making comparisons and illustrations. Ownership of automobiles has become quite universal, and jurors must be presumed to be quite familiar with their operation and the possibilities of danger arising from a careless operation thereof. The argument complained of was not likely to have inflamed the passions of the jury or to have induced the rendition of a verdict for a large sum. The evidence shows that appellee was, in fact, severely and permanently injured. He had lacerations on the top of his head, and suffered intense headache following the injury. X-rays taken of his head revealed a fracture of the skull, extending transversely across the top.

6. NEW TRIAL: verdict: excessiveness: $8,000.

This fracture was approximately five inches from point to point. He has since had fainting spells and epilepsy, and has been unable to work. Prior to the accident, he had an earning capacity of from $200 to $500 per month. He has suffered great pain and discomfort since the injuries. In the treatment of his injuries, a spinal puncture was necessary. He was 46 years of age, weighed about 210 pounds, and was in good health before the accident, but was greatly reduced at the time of trial. The verdict is large, but we cannot say that it was the result of passion and prejudice on the part of the jury and that a new trial should be granted on that ground. The evidence is conflicting on most material points, and we think that the court properly submitted to the jury the issues stated.

Since we find no reversible error in the record, the judgment below is affirmed.—*Affirmed.*

EVANS, C. J., and DE GRAFF and VERMILION, JJ., concur.